UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOHAMED SALEH, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br>v.<br><br>UDEMY, INC.,<br><br>Defendant. | Civil Action No. 23-02207 (JXN) (JSA)<br><br>**SUPPLEMENTAL OPINION AND ORDER** |

**NEALS**, District Judge

This matter comes before the Court on Defendant Udemy, Inc.'s ("Udemy" or "Defendant") motion to compel Plaintiff Mohamed Saleh ("Saleh" or "Plaintiff") to arbitrate this dispute pursuant to 9 U.S.C. §§ 3, 4, and 6, and to dismiss or stay this action pending that arbitration. (ECF No. 29.) Plaintiff opposed the motion (ECF No. 33), and Defendant replied in further support (ECF No. 34). The Court considered the parties' submissions and held oral argument on March 21, 2024. The Court issued a ruling from the bench on that same date, granting Defendant's motion to compel.

This written opinion supplements the Court's oral opinion and further sets forth the reasoning of the March 21, 2024 ruling on the record, pursuant to Local Civil Rule 52.1. For the reasons that follow, Defendant's motion to compel is **GRANTED**.

**BACKGROUND**

The Court recounts only those facts necessary for a resolution of this motion.

This matter action concerns the alleged disclosure of private information of digital subscribers without proper consent. Plaintiff, on behalf of himself and the putative class(es) he

seeks to represent,[1] initiated this suit on December 12, 2022, against Udemy.

Udemy is a California-based company that offers a wide array of online business and technical courses to individuals, businesses, nonprofits, and governments, and these courses include video content. (Erin Sink Declaration ("Sink Decl.") ¶ 3, ECF No. 29-1; Compl. ¶ 18, ECF No. 1.)

Plaintiff is a New Jersey resident, who subscribed to Udemy's product and services and is a regular Facebook user. (*Id*. ¶¶ 21, 45.) Plaintiff claims he consistently paid Udemy a subscription fee during the period of his subscription and watched video content through www.udemy.com. (*Id*. ¶ 22-23.)

Plaintiff alleges that www.udemy.com embedded the Facebook Pixel into its computer code. (*Id*. ¶19.) As a result, when a Udemy subscriber watches videos on Udemy's website, the Facebook Pixel installed by Udemy on its website sends Facebook certain information about the viewer and what the viewer watched, including the video content name, its URL, and the subscriber's Facebook ID ("FID"). (*Id*. ¶¶ 20-21.) Plaintiff claims that he watched video content through www.udemy.com, and Udemy disclosed both data containing Plaintiff's and other digital-subscribers Class Members' (i) personally identifiable information or FID and (ii) the computer file containing video and its corresponding URL viewed to a third party, Meta Platforms, Inc. ("Facebook"). (*Id*. ¶¶ 1, 23-24.) Plaintiff asserts that he did not provide Udemy with written consent to disclose his personal information. (*Id*. ¶ 25.)

---

[1] Plaintiff seeks certification of the following classes, initially defined as follows:

VPPA Class: All Udemy subscribers within the United States for whom Udemy provided information which identifies a person as having requested or obtained specific video materials or services within two years of the filing of this action through final judgment.

Wiretap Class: All Udemy subscribers within the United States for whom Udemy intercepted/procured electronic communications within two years of the filing of this action through final judgment.

Plaintiff filed this action in the Superior Court of New Jersey, Bergen County, asserting two causes of action against Udemy: violation of the Wiretap Act, 18 U.S.C. § 2511 et seq., ("Wiretap Act") (Count I), (*id*. ¶¶ 41–44), and violation of the Video Privacy Protection Act 18 U.S.C. § 2710 ("VPPA") (Count II), (*id*. ¶¶ 45-49). On April 20, 2023, Udemy removed to this Court. (*See* Notice of Removal ¶¶ 3-8, ECF No. 1.)

On August 30, 2023, Udemy filed the instant motion to compel Plaintiff to arbitration. (ECF No. 29-9 at 1.) On October 27, 2023, Plaintiff filed an opposition (ECF No. 33), and on November 17, 2023, Udemy filed a reply in further support (ECF No. 34).

**STANDARD OF REVIEW**

The Federal Arbitration Agreement Act ("FAA") "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999). Section 2 of the FAA provides that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The "saving clause" in Section 2 indicates that the purpose of Congress "was to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967).

Before compelling arbitration pursuant to the FAA, a court must determine that: "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement." *Kirleis v. Dickie, McCarney & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). If the response is affirmative on both counts, the FAA requires the court to enforce the arbitration

3

agreement in accordance with its terms. *LoMonico v. Foulke Mgmt. Corp.*, No. CV1811511, 2020 WL 831134, at *3 (D.N.J. Feb. 20, 2020); *see also* 9 U.S.C. § 4. "It is well established that the [FAA] reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis*, 560 F.3d at 160 (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "But this presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Id*. (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)); *see also Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 n.3 (3d Cir. 2014) (the presumption in favor of arbitrability "applies only when interpreting the scope of an arbitration agreement, and not when deciding whether a valid agreement exists."); *Jaludi v. Citigroup*, 933 F.3d 246, 255 (3d Cir. 2019) ("The presumption of arbitrability enters at the second step—it applies to disputes about the scope of an existing arbitration clause.").

To determine whether the parties have agreed to arbitrate, courts apply "ordinary state-law principles that govern the formation of contracts." *Century Indem. Co.*, 584 F.3d at 524; *see also Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). When "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is unenforceable based on a generally applicable contractual defense, such as unconscionability." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (internal citations and quotations omitted).

In determining whether a valid arbitration agreement exists, a court must decide whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Third Circuit has established a two-tiered framework for assessing motions to compel arbitration. *See Guidotti v. Legal Helpers Debt Resolution*,

4

L.L.C., 716 F.3d 764, 776 (3d Cir. 2013). Where it is apparent on the face of the complaint, or in documents relied upon in the complaint, that the claims at issue in the case are subject to arbitration, the case is considered pursuant to the motion to dismiss standard as applied under Fed. R. Civ. P. 12(b)(6). *Id.* at 774–76. However, where the complaint does not establish on its face that the parties have agreed to arbitrate, or where the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, then the parties are entitled to limited discovery on the question of arbitrability before a renewed motion to compel arbitration is decided on a summary judgment standard as under Fed. R. Civ. P. 56. *Id.*

In sum, "the legal standard is simply that [courts] apply the relevant state contract law to questions of arbitrability, which may be decided as a matter of law only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc.*, 851 F.3d at 288–89.

**DISCUSSION**

As an initial matter, the fact that Plaintiff's Complaint does not attach, incorporate, or specifically mention the mandatory arbitration provision contained in the Dispute Resolution section of Udemy's Terms of Use ("Terms") does not foreclose the operation of a Rule 12(b)(6) standard. *See Benedict v. Guess, Inc.*, 2021 WL 37619 at *4 (E.D. Pa. Jan. 5, 2021); quoting *Sorathia v. Fidato Partners, LLC*, 2020 WL 5121473, at *3 (E.D. Pa. Aug. 31, 2020); *see also Joaquin v. Directv Grp. Holdings, Inc.*, No. CV158194MASDEA, 2016 WL 4547150, at *3 (D.N.J. Aug. 30, 2016). "Precluding review of a complaint under the Rule 12(b)(6) standard simply because a plaintiff has avoided reference to an existing arbitration agreement would frustrate the purpose of the FAA: to facilitate expedited resolution of disputes where the parties to a contract have opted for arbitration." *Sorathia,* 2020 WL 5121473, at *3. Further, where, as here, a contract

is integral to Saleh's allegations (i.e., he seeks relief as a customer/subscriber of Udemy), and no competing evidence has been proffered by Saleh, a motion to dismiss standard applies. *See Guidotti,* 716 F.3d at 773–75; *Color Street LLC v. Audere, Inc.*, 2023 WL 7298467 (D.N.J. Nov. 3, 2023); *Lloyd v. Retail Equation, Inc.*, 2022 WL 18024204, *7 (D.N.J. Dec. 29, 2022).

Next, Plaintiff does not dispute that he signed up for a Udemy account and bought three Udemy courses. (*See* Compl. ¶¶ 21, 47; Sink Decl., ¶¶ 5–16.) To become a customer of Udemy, Saleh completed Udemy's sign-up and checkout processes. To complete those processes, he had to press Udemy's "Sign up" and "Checkout" buttons, which were displayed with a clear text informing him that by doing so, he agreed to Udemy's hyperlinked Terms. It is undisputed that Udemy's Terms contain a mandatory arbitration provision. And Saleh does not dispute that he did not opt out of—or voice any objection to—the Terms. Further, while Saleh "takes issue with and objects to the format in which Defendant presents the evidence regarding the alleged notice of terms," (ECF No. 33 at 8), he fails to introduce any evidence that Udemy's presentation of the signup and checkout processes in the Sink Decl. (ECF No. 31) is inaccurate. Saleh does not deny that he became a Udemy member by pressing a "Sign up" button, signaling his agreement to the Terms; nor does he deny that he bought Udemy courses by pressing a "Checkout" button again, signaling his agreement to the Terms; nor does he deny later receiving notice of changes to the Terms—including to the dispute resolution agreement—and the opportunity to opt out of those changes. In short, Saleh offers no evidence of any failure on his part to receive, view, understand, and assent to the Terms and the arbitration agreement they contain. *See Lloyd*, 2022 WL 18024204 at *7. Moreover, as in *Lloyd*, Udemy's sign-up and checkout flows provided Saleh reasonable notice that he was agreeing to the Terms. 2022 WL 18024204 at *10. In both instances, the hyperlink to the Terms is presented in a clear font in a relatively uncluttered location on the screen.

*Id*. The immediate proximity of the notice to the "Sign up" and "Checkout" buttons, coupled with the textual notification and hyperlink to the Terms, were, in each case, "enough to place a reasonably prudent user on notice." *Id*. This combination of clarity and conspicuousness, along with a plain textual notification that Saleh was agreeing to the Terms by signing up or checking out, meets the *Lloyd* standard. *Id*. Accordingly, the Court finds that the sign-up and checkout flows put Saleh on notice he was agreeing to the Terms. The follow-up email informing him of the change to the Terms confirmed his agreement. Under the applicable legal standard, Saleh's actions evidence his acceptance of the Terms as part of his agreement with Udemy.

The application of California law yields the same result. In *Babaeva v. J. Crew Group, LLC*, the court framed the analysis as follows:

> In the context of online transactions, courts routinely enforce contracts where (1) a consumer is expressly told that by clicking a button to complete a purchase or register on a website, they are agreeing to be bound by a set of terms of usage and (2) the website contains a link to the terms conspicuously and in proximity to the button that is clicked. *See, e.g., Dohrmann v. Intuit*, Inc., 823 F. App'x 482, 484 (9th Cir. 2020).

2023 WL 7346079 at *1 (N.D. Cal. Nov. 6, 2023). Here, like in *Babaeva,* the Terms were directly hyperlinked from the disclosure adjacent to the button Saleh clicked. *Id*. Saleh then had to proceed through the sign-up and checkout processes to complete the act of registering an account and making a purchase, as only registrants can purchase courses from Udemy. In both the signup and checkout flows, Udemy clearly and conspicuously informed Saleh he was agreeing to the Terms and made the hyperlink to those Terms evident and available.

Thus, for the reasons stated above and for the reasons set forth in this Court's oral ruling on the record on March 21, 2024,

**IT IS** on this 21<u>st</u> day of March, 2024,

**ORDERED** that Defendant's motion to compel (ECF No. 29) is **GRANTED** and this case

is **STAYED** pending arbitration; and it is further

**ORDERED** that the Clerk of Court shall **ADMINISTRATIVELY TERMINATE** this matter. Based upon the results of the arbitration, the parties may file a letter requesting that this matter be reinstated to the Court's active docket.

                                                **JULIEN XAVIER NEALS**
                                                **United States District Judge**